UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:10-cr-325-T-23AEP
     8:12-cv-2481-T-23AEP

GREGORY GUIDO
_____/

**ORDER**

Gregory Guido moves (Doc. 1) to vacate his sentence under 28 U.S.C. § 2255. Guido challenges the validity of his convictions for money laundering and for conspiring to commit wire fraud. Guido serves 108 months of imprisonment. The United States admits that Guido timely moved to vacate. (Doc. 11 at 2)

**FACTS**

Through an illicit income-tax credit scheme, Guido and co-defendant George Calvert defrauded the IRS of several million dollars.[1] Using phony contracts with landfill operators and phony engineering reports, Guido and Calvert falsely claimed the ownership of assignable methane-fuel income-tax credits. Investors received unjustified tax-refunds based on the fraudulent methane-fuel income-tax credit, and Guido and Calvert received a part of each investor's unjustified tax refund.

---

[1] This summary of the facts derives from the United States's response (Doc. 11), the sentencing transcript (Cr. Doc. 172), and the pre-sentence investigation report.

The jury found Guido guilty of conspiracy to commit wire fraud under 18 U.S.C. § 371 (count one) and conspiracy to launder money under 18 U.S.C. § 1957 (counts two through seven and count ten).  At sentencing, Offense Level 34, Criminal History Category I, yielded an advisory guidelines range of 151 to 188 months of imprisonment.  Guido received a below-guidelines sentence of sixty months on count one and 108 months on counts two through seven, to run concurrently.  Guido chose not to appeal.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Guido claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Guido must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691–92. To meet this burden, Guido must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Guido cannot meet his burden by showing only that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that counsel has no duty to raise a non-frivolous claim).

**Ground One**

Fifteen months before Guido's indictment and again two weeks before trial, the United States proposed a plea with a maximum sentence of five years of imprisonment. (Doc. 11-1 at 2–4)  The proposed plea required Guido's cooperation, restitution, and payment of back taxes.  Guido's co-conspirator, Robert Henry

Anderson, accepted the same proposed plea in another criminal case and received twenty-one months of imprisonment. *United States v. Robert Henry Anderson,* case no. 8:09-cr-177-T-27MAP (Doc. 69).

Guido alleges that he rejected the United States's proposed plea because counsel failed to disclose the twelve- to fifteen-year sentence that Guido faced under the sentencing guidelines if convicted at trial. (Doc. 1 at 14–16; Doc. 14 at 3–9) Guido asserts that, but for counsel's failure to advise him of the consequences under the sentencing guidelines of a guilty plea compared to a jury verdict, he would have pleaded guilty and received a lesser sentence.

Counsel's May 9, 2013 affidavit states that, in consideration of the proposed plea, counsel told Guido that before sentencing enhancements and based on the loss amount in the civil complaint, he faced ten years of imprisonment. (Doc. 11-1 at 3) Guido contends that the conversation never occurred. (Doc. 1 at 14; Doc. 14 at 3–4) Guido asserts that counsel's contemporaneous pre-trial memorandums, which fail to mention that counsel disclosed the sentence Guido faced under the sentencing guidelines, rebut the affidavit.

Even assuming that counsel performed ineffectively by not disclosing during plea negotiations the twelve- to fifteen-year sentence Guido faced under the sentencing guidelines, Guido fails to show prejudice. The record shows that Guido knew that the statutory penalties equal or exceed fifteen or more years of imprisonment. At the bond hearing, Guido acknowledged that the charges in the

indictment might yield fifteen or more years of imprisonment.[2] Given Guido's established and admitted knowledge of the statutory penalties, Guido fails to show a reasonable probability that, but for counsel's failure to disclose the sentence he faced under the sentencing guidelines, he would have pleaded guilty. Because Guido shows no prejudice, Guido's challenge lacks merit.

**Ground Two**

Initially, the United States refused to propose a plea that capped imprisonment at five years. (Doc. 11-1 at 7) In exchange for Guido's cooperation, counsel successfully negotiated a proposed plea with a maximum penalty of five years of imprisonment, the same proposed plea Guido's co-conspirator Anderson accepted. (Doc. 11-1 at 7-15) Guido alleges that counsel failed to negotiate a more favorable plea. (Doc. 1 at 17) By his own admission, Guido refused to cooperate with the United States unless the plea agreement guaranteed probation and no restitution. (Doc. 1 at 17) Counsel refused to propose a probation-only plea and advised Guido that the United States would terminate negotiations. (Doc.11-1 at 11) Guido has not overcome the strong presumption that counsel performed reasonably and with sound strategy by not proposing a probation-only plea. *See Chandler*, 218 F.3d at 1314. Because counsel need not propose a plea the United States plainly would not accept, the ineffective assistance of counsel claim fails.

---

[2] By signing the order setting conditions of release, Guido acknowledged (1) that the charges involve penalties that equal or exceed imprisonment for a term of fifteen years or more, (2) that he read the order setting conditions of release, and (3) that he fully understood the conditions of his release and the possible penalties for violating those conditions. (Cr. Doc. 18 at 3-4)

Also, Guido offers no evidence that the United States would have proposed a more favorable plea after further negotiation. Whether to offer a plea agreement and whether to include certain terms in that agreement are both matters of prosecutorial discretion. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). "[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including . . . the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000). Guido speculates that the United States would have negotiated further and that Guido would have accepted a plea that entailed imprisonment or restitution. Speculation cannot establish Guido's entitlement to relief.

The record refutes Guido's contention that he would have pleaded guilty if the proposed plea entailed imprisonment or restitution. Counsel's affidavit and correspondence show that Guido refused to assist the United States and maintained his innocence through trial. (Doc. 11-1 at 4–5, 9, 21) Guido affirms that he rejected the proposed plea because the proposed plea required that he testify against others. (Doc. 1 at 17) After the trial, counsel advised Guido that cooperation might result in a lesser sentence. (Doc. 11-1 at 21) But Guido remained uncooperative. Guido's failure to establish prejudice precludes relief based on ineffective assistance of counsel.

**Ground Three**

Guido alleges that counsel failed to establish during the cross-examination of an IRS agent that the United States would have lost less money if the undercover agent had exposed the scheme during the initial investigation. (Doc. 1 at 18) Guido asserts that counsel's defective performance resulted in a greater loss calculation and a greater sentence.

An undercover agent owes the subject of a criminal investigation no duty to stop the crime. Counsel's failure at trial to elicit testimony supporting a frivolous argument is not deficient performance. *Freeman v. Attorney General State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008). Guido fails to show that the IRS agent's testimony about the United States's loss over the course of the investigation would have resulted in a lesser sentence.

Citing *Brady v. Maryland*, 373 U.S. 83 (1963), Guido alleges that the United States failed to disclose favorable evidence, which purportedly shows that some landfill sites had legitimate methane-fuel facilities. (Doc. 1 at 19) Based on the prosecutor's comment at the sentencing hearing that "[p]erhaps the landfills, in a couple of instances, but for the most part no one was entitled, to cause the IRS to pay out millions of dollars on these claims," Guido requests a new trial or a new sentence. (Cr. Doc. 172 at 23) Guido asserts that the allegedly undisclosed evidence would change the outcome of the trial. (Doc. 1 at 19–20)

To prevail under *Brady*, Guido must show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Alzate*, 47 F.3d 1103, 1109–10 (11th Cir. 1995). Guido forfeited this substantive claim because he could have raised the claim on direct appeal. Procedurally defaulted, the claim is not reviewable on the merits absent a showing either of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614 (1998); *United States v. Frady*, 456 U.S. 152 (1982). To show cause for not raising the ground on direct appeal, Guido must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim. *Lynn v. United States*, 365 F.3d 1225, 1235 n. 20 (2004). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Guido does not assert cause, such as ineffective assistance, for failing to bring a *Brady* challenge to the prosecutor's alleged non-disclosure. Even assuming counsel's purported defective performance constitutes cause for the procedural default, Guido shows no prejudice. No facts support Guido's claim that legitimate methane-fuel facilities exculpate Guido of the fraud conviction. *See Collins v. United States*, 481 Fed. Appx. 525, 528 (11th Cir. 2012) ("Unsubstantiated and conclusory allegations are insufficient to establish constitutional violations that will support granting a motion to vacate."). Ample evidence supports the conviction. Because

Guido fails to show prejudice from the purportedly undisclosed evidence, the *Brady* violation presents no basis for Section 2255 relief.

**Ground Four**

Guido argues that counsel performed ineffectively by failing to raise at sentencing the disparity between his 108-month sentence and an elderly co-defendant's 84-month sentence. (Doc. 1 at 20) As explained at Guido's sentencing, Guido and Calvert are not similarly situated due to Calvert's age and infirmity:

> Mr. Calvert's sentence was reduced primarily because of his age and infirmity. I would say that his sentence may prove to him as rigorous as a sentence, perhaps almost twice as long, to a person of 20 year[s] — or more years less age and notably better health.
>
> But looking[,] casting my eyes upon the three sentences, they seem to me in terms of raw time, Mr. Guido gets the largest amount of time. I can think of some arguments against that, but, making the two adjustments that I just mentioned, one for cooperation and one for age and infirmity, these sentences seem to me to be fair and reasonable and not disparate in any significant way.

Transcript of Sentencing Proceedings at 53-54 (Cr. Doc. 172)

Within the bounds of reasonable professional judgment, counsel declined to challenge the sentencing disparity. *Freeman*, 206 F.3d at 1143 ("We must respect the counsel's tactics if they seem 'reasonable considering all the circumstances.'" (quoting *Strickland* )). Sentenced below the guidelines, Guido offers no evidence that a challenge to the disparity would have resulted in a shorter sentence.

Guido faults counsel for failing to argue successfully against the imposition of the sentencing guidelines's leadership enhancement. (Doc. 1 at 20) At sentencing, counsel objected to the enhancement, an objection overruled because Guido received approximately twenty-five percent of the proceeds and occupied a "significant operating responsibility in the implementation of this scheme." Transcript of Sentencing Proceedings at 42 (Cr. Doc. 172 at 9–12). Guido cannot show that his counsel's performance was deficient. Relying on co-conspirator Anderson's testimony that Guido was a "neophyte in the business," Guido alleges he played a minor role in the scheme. Guido fails to substantiate that, as a neophyte, he had minor operating responsibility in the scheme. Guido's claim warrants denial.

**Evidentiary Hearing**

Guido requests an evidentiary hearing. This case warrants no evidentiary hearing because the face of the motion, the annexed exhibits, and the earlier proceedings show that the movant is not entitled to relief. *Broadwater v. United States,* 292 F.3d 1302, 1303 (11th Cir. 2003).

Accordingly the motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The clerk is directed to enter judgment against Guido and to close this case.

# DENIAL OF BOTH
## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Guido is not entitled to a certificate of appealability. A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability. Section 2253(c)(2) permits issuing a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Guido must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because Guido fails to show that reasonable jurists would debate the merits of the claims and the procedural issues, Guido is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Guido must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 6, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE